Your argument in our first case, Fontanez v. O'Brien, No. 14-7607. So much for that. Good morning. Good morning. Good morning, and may it please the Court. Jeremy Fontanez seeks 28 U.S.C. Section 2241 habeas relief from the Bureau of Prisons' decision to force him into the inmate financial responsibility program. What does he exactly want? What exact relief? I still don't know the answer to that question. Sure. So the answer to the question, Judge Motz, is he wants the exact same relief that was issued to the inmate in Ward v. Chavez, which is an injunction barring him or barring the Bureau of Prisons from setting the terms of his restitution and barring the Bureau of Prisons from withholding the privileges, which in this case I would call a penalty, against him for not participating in the program. Well, I didn't read your brief as ever talking about the penalties. Well, I think that… Because it seems to me that, you know, you sort of take the good with the bad. Okay, he gets out of the program, but the program is designed to encourage people to be within it, and the Bureau of Prisons isn't doing anything illegal by making it less comfortable for people that do not enter this program, is it? So the answer to your question is, is the program in the way that the government has consistently described it, totally untethered from reality, lawful? Yes, we're not making a constitutional challenge against the IFRP kind of as the IFRP. What we are challenging is, in the circumstances of this particular case, has the Bureau of Prisons forced Mr. Fontanez into the Inmate Financial Responsibility Program, and is the only authority setting the operative terms of his restitution in violation of Article III and the plain text of the Mandatory Victims Restitution Act? That's the claim. Ward v. Chavez is more or less on all fours. I will concede to you, Judge Motz, that there's not a ton of briefing on the remedy, mostly because the government didn't really make a lot of arguments about the remedy, and perhaps the remedy can be resolved once we go back to the district court, but I tried to shoehorn kind of all of the briefing about the remedy into the citation to Ward v. Chavez. This case is more or less a mirror image of that. But I thought in Ward, and tell me if I'm wrong, I thought that the actual relief in Ward was something you're not asking for, that the restitution order itself was invalid. He doesn't owe anything, and that's why BOP can't collect. He has to go back, be resentenced with a valid restitution order. But you're not asking for that. We are. The only thing we're asking for, and perhaps I'll check with Judge Harris. So the answer to that question, though, first, is yes, you're not asking for that, correct? We are asking for an injunction barring the Bureau of Prisons from enforcing the judgment and commitment order in the manner that it has said it is enforcing it, which is forcing him into the Inmate Financial Responsibility Program. I'll concede to you that this case is, like, a little bit dystopian and, like, maybe Kafka asked, because it's not entirely clear to me what the Bureau of Prisons really thinks it's doing. Well, it's not clear to us what you're asking for, and I still don't understand your answer to my colleague's question. Okay, so let me – I think there's – Can you just give an yes or no answer and then explain it? Sure. So the answer to your question is are we asking for, I guess, reformation of the restitution order, Judge Harris, if that was your question? The answer to that is no. What we are asking for is an injunction barring the Bureau of Prisons from enforcing the judgment and commitment order in the way that it has interpreted that order. You know, I recognize it's kind of a fine distinction, but that is fundamentally what the court did in Ward v. Chavez, what the Ninth Circuit did. No, it didn't. Okay, well, perhaps maybe my understanding of what the court ordered is also informed by what the Bureau of Prisons did. I think – and I'll get the pin site for you, but I think it's at JA 28 or so. There was a notice from the Bureau of Prisons. No, we know that, and we know your fellow got a hold of the notice, and that's what he's – but you're not asking for the same relief that was asked for in the Ninth Circuit case and given. Well, let me just be very clear about what the request is, and I think we even put it at the conclusion of the opening brief. We want an injunction barring the Bureau of Prisons from forcing them into the and setting the operative terms of his restitution. Well, you're right. You say something akin to that anyway, but it seems to me that that could be just semantics. The Bureau of Prisons can get up and say, we're not forcing him into this program at all. If he doesn't want to be in it, we'll put him in some status. I forgot what they call their status, but inactive status. He's just not going to get any of these privileges, and that doesn't – I don't understand what your basis would be for challenging that. The Bureau of Prisons is entitled to run the prisons in a way that they see fit for orderly organization of the prisoners, aren't they? Absolutely. And so there's nothing that would prevent them from imposing various conditions. Again, absolutely. But the circumstances of this case are there is no authority monitoring the terms, the setting of the terms of restitution other than the Bureau of Prisons. That's really what Ward v. Chavez is about. The sentencing court has been totally cut out of the process, and so the only entity that is – and Judge Montes is laughing. I've seen that laugh many times. It's just because you don't ask us to do anything about that. That's what – I made my – I'll let my colleagues talk. Counsel, may I ask you a question? Counsel, may I ask you a question? Of course. You don't dispute that your client owes restitution, correct? No. All right. So put the order aside. He owes money. There is a program that allows the Bureau of Prisons to try to collect those things. That's what this format is. At one point, your client voluntarily signed up to be a part of that in terms of collecting money for all his restitution, correct? I'm quibble with the use of the term volunteer. Okay, all right. But he signed an agreement. He signed it. He signed an agreement. He signed it. And now he wants to stop, right? So then the prison is saying, okay, he can stop. But he did sign up, and we have a situation where now there are consequences, as outlined by Congress, what they are. And you don't quibble with that either, that he's subject to the consequences, correct? I think in the circumstances of this case, the answer to your question is yes. You quibble with the consequences? I don't think because his choice is not like every other inmate. His choice is not like every other inmate. His choice is you have to be in the program, you cannot get out. If you try to get out, then you are in violation of our interpretation of the order. You're not paying restitution. It's not the order. The consequences are set forth in the CFR. Well, Judge Gregory, I think that's the whole case in a nutshell. What is the Bureau of Prison's interpretation of the order? It's different from my interpretation of the order, perhaps this court's interpretation of the order. It's rather plain language, isn't it? It talks about the scope of the kind of jobs you can have, how much money they can take. There's all kinds of things. The consequences, aren't they set forth what the consequences are? Yes, the consequences of withdrawing from the program. Of non-participation. Of non-participation in the program or not paying towards restitution. Yes, those are set forward. But then you can't quibble with those. He has to be subject to those, correct? Well, I can't quibble with those. I'm trying to get something we can agree on here. What about that? How can you, I mean, really in terms of a logical standpoint, argue that he's not subject to the consequences? Because the Bureau of Prisons is the only authority that controls the terms of his restitution. Counsel, I'm sorry, and this just goes back to the Ward v. Chavez thing. You're agreeing he owes whatever it is, $27,000 in restitution. Unlike in Ward, you're not challenging that. So he owes $27,000. He won't pay it off. He's subject to the consequences. You're not challenging that he owes money he's not paying off. Maybe that is the miscommunication here on my part. We are challenging the method by which he is paying his restitution now as the Bureau of Prisons has regulated it. I understand you're challenging the schedule, but you're not challenging that he has a debt, a restitution debt, that he is now refusing to pay off. So he's subject to the consequences. It just seems really straightforward unless you're challenging the restitution order itself, which you're not. I'm trying to figure out a way to kind of bridge this divide. I think that what we have requested and what he requested from the beginning was an injunction, barring the Bureau of Prisons from forcing him into this program and penalizing him for not participating in the program. He would like to be placed in exempt status. But he's not exempt because he owes all this money that he won't pay. But that's the problem is that the order fundamentally, at least from the way the Bureau of Prisons has interpreted it, cannot be enforced in the way that it's written. And that's what Ward v. Chavez says. It says that this order, the manner in which it is written, is unlawful. The Bureau of Prisons cannot act on this unlawful order. We are making the exact same challenge. Ignore the antecedent. It's like you're arguing two and three and you've forgotten one. I'm not sure what one is. My understanding of Ward v. Chavez, I've read it maybe a thousand times, but I'm sure the Court has read it many more times and the law clerks, unfortunately, have probably also read it many more times, is that Ward v. Chavez was, the procedural posture was a 2241 challenge to block the Bureau of Prisons from enforcing this order in the way that it is written. The Ninth Circuit did not reform the order. It did not reform the order, and that was not in the remedy. It was absolutely not in the remedy because the Ninth Circuit said if the government wants, it can go back and move to have the order reformed in the district court in the original criminal action. That has nothing to do with the 2241 action. That's all we're asking for. We are asking for this court, or the district court, I guess, to issue an injunction, barring his participation in the Bureau of Prisons and barring the Bureau of Prisons from enforcing the privileges or the penalties against him if he chooses not to participate, because it has no lawful basis to put him in this program. I mean, I really, I'm quite frankly surprised at this line of questioning because I don't think that this case has any daylight really between it and Ward v. Chavez. So let me surprise you further. To the extent that the order, it says he owes money, and in Ward there was a proper disconnect with the way they were trying to say the order, right, and what the order imposed and how they were trying to collect it. What's the disconnect here? Debt and trying to collect it. Are they trying to collect more than they should, more frequently, or the amount is too high? What is it about the collection that's inconsistent with the debt? Forget about it. It's the debt. As Judge Harris says, you've got $27,000. That's the debt. Now you have a collection process in this program. Tell me this at least. Just hold on to this. What manner of collection under this program is inconsistent with that debt, with the debt, with the debt counsel? Stay with the debt. Judge Rickery, I don't even think I can answer that question because I disagree with the entire premise of the framing. And let me make two points. Okay, go ahead. You're making, okay, we're going to talk about syllogisms and logic, formal logic. Tell me what premise is wrong in terms of your case. So there are two things. The first is I think there's maybe a predicate about the program that maybe isn't being communicated. If, let's say, an inmate went into the Bureau of Prisons and had no monetary obligation, he or she could still sign up to be in the IFRP and would get all of the privileges of being in the IFRP. There's just a zero restitution obligation. And that's fundamentally, I think, what Mr. Fontenez is asking for. He wants to be because of this. Did you say someone could go into prison and not owe any money and then sign up for the program? Right, if there's no. But he does owe money. Right. That's the big difference. But the order upon which that is being enforced by the Bureau of Prisons, that order is unlawful. Under almost every circuit court's precedent, that order would not be enforced. And if it were on, you know, if the challenge were totally different and on direct appeal, it would be struck down as error.  He wants to have the privileges of the program and not have to have this particular. And maybe I'm missing something, but if this were on direct appeal, you're saying the order would be struck down, there would be an invalid restitution order, and he would owe zero. And that's why BOP wouldn't be able to collect any money because there would be no valid restitution order. He doesn't owe anything. But that's not what you're asking for, and that's what I keep having trouble with. Okay, well, that is what we're asking for. You're not. You don't think he owes zero. You think he owes $27,000. I think that there is. And I don't understand why you think that, because you think there's no valid restitution order. But for whatever reason, you think he owes $27,000, and that's why your case is different. Okay, so maybe my very first question out the gate, maybe my answer to that was wrong, or maybe I misunderstood the question. The effect of this order in this context, in these circumstances, is that there is no valid restitution obligation. That's our argument. That if the government wants, it can go back and, I guess, reform the order or petition the court to reissue a new judgment and commitment order, a new restitution obligation. But there is no daylight between the order being unlawful and having zero restitution obligation. Okay, I thought you said he owed $27,000 in the brief and in front of us like five minutes ago. Actually, if you said it in your brief, I don't think you can change your mind here before us. And it had always been my understanding that that is what you said. I disagree that we took the position in the brief that there is a restitution obligation and the government is free to pursue it however they want. No, no, no, no, no. You're changing on me. You have consistently said that they're not entitled to do this, but you didn't say that he didn't owe the money. You've never said that. Judge Motz, I— Okay, maybe you can, when you're listening to the rebuttal, you can point out to me the place in your brief where you say he doesn't owe the money. Okay. Okay. May I make one tweak? Certainly. And then I'm happy to sit down and let the government speak. No, no, take all your time. Well, the only thing I'd like to say is that the question of if we challenge whatever sum was calculated by the district court and whether the order, as it is being enforced, is sufficient as a lawful matter under the Mandatory Victims Restitution Act, Article III, all that, I don't think there is any difference between those things. I understand you saying that, but I don't think that—I'm not sure that's so, and I don't think that's the argument you made in your brief. Well, okay. I'll be happy to get the pin site in the opening brief for the reply to answer that question. But, I mean, I don't even think it's necessarily a question of what we briefed, what we didn't. It's true that, as I said at the outset of the argument, there was not a lot of briefing on what the remedy would be because we were more focused on the question of this lawful order, unlawful order. So I do feel like it's a little bit unfair to kind of, you know, do any briefing on that. And in most habeas cases, I think the procedure would be we'd go back to the district court and have briefing about this issue. Counselor, just so I can understand sort of how the parts of your argument fit together, the first argument in your brief is that this is cognizable under 2241 because all you're challenging is the execution of the sentence. You're not challenging the sentence. The sentence is fine. This is just about execution. How is that possibly consistent with saying, oh, by the way, the sentence also is invalid? I mean, I thought you made great efforts not to say this. Because you were trying to get it in under this execution. Right. I mean, so we are not – I agree with you that, again, the distinction is very fine. Perhaps it is unpersuasive, but I think that the distinction is a true one, and it's a distinction that's been drawn by the Ninth Circuit in Ward v. Chavez and that was ultimately successful, which is that the question of whether we're challenging the order or the enforcement of the order in cases like this, it's a little bit of kind of like a meaningless question. For 2241 purposes, yes, we are challenging the enforcement of the mechanism. With respect to merits, we are also – we have to assess what the order says because that's what the Bureau of Prisons is basing its entire, you know, line of conduct on. And so that's, I think, fundamentally maybe what's going on here. I mean, I can see Judge Harris here shaking your head. Oh, no. I'm just confused. No, sorry. No, that's all right. I'm happy to – I may perhaps let the government sort this out, and I will do my homework for Judge Motz. Thank you. Okay, great. Thank you. Now, I have to say I'm not any clearer on what the government is saying, so, you know, I need all the help I can get here. He wants out of the program. I don't understand whether you said he can get out of the program or not. Can he get out of the program? Certainly, and first let me say good morning, Your Honors. Tara Tai appearing on behalf of the United States. To answer your question, Your Honor, as you suggested during opposing counsel's argument, the IFRP is fundamentally how it's set up a voluntary program. It's a way to allow inmates to satisfy their restitution obligation. He is not forced to make the payments each quarter. He can at any point, Mr. Fontanez can say, I would like to stop making payments through the IFRP. The Bureau of Prisons will place him in a refused status. And has that happened? He is currently consistently making those payments, so he has not indicated to the Bureau of Prisons that he would like to be placed in that refused status. Well, he says he's got letters in the JA that say he wants out. Yes. Okay, so? And that position, the position of Mr. Fontanez that he is somehow being compelled or forced to participate in the IFRP is not consistent with either the record in this case or how the IFRP is fundamentally structured. First, I believe the confusion comes from the wording of the restitution order in this case. The sentencing judge did say in the restitution order, Defendant shall make restitution payments from any wages he may earn in prison in accordance with the Inmate Financial Responsibility Program. Restitution shall be due immediately. And I think the confusion stems from that wording of in accordance with the IFRP. However, based on the structure of the IFRP in both the Code of Federal Regulations and the Bureau of Prisons Program Statement, that language suggesting the use of the IFRP is almost superfluous because the IFRP fundamentally applies to all federal inmates that owe a financial obligation. 28 CFR 545.10 specifically says that it applies to all inmates in federal facilities with certain limited exceptions, which Mr. Fontanez has not claimed that he falls within. And also, in the Bureau of Prisons Program Statements, it specifically says all sentenced inmates with financial obligations will develop, with staff assistance, a financial plan to meet those obligations. And so I believe the confusion stems from he is not fundamentally being treated differently than any other inmate in the prison system, merely because that restitution order suggests the use of the IFRP. That is not what... Well, I don't know that that's what the confusion... I never thought that. I thought he was... I don't know what he thought. But what I still don't understand is it seems to me he said that he wants to get out and it's been responded, you signed this contract. Now you're telling me he can get out. So if he has written you letters saying he wants out, why don't you let him out? I understand you're going to impose these various penalties that my friend Judge Gregory has been talking to counsel about. Certainly, Your Honor. And that's what it seems to me is part of the program. Certainly, Your Honor. And I think the distinction is between removing him from the program entirely and allowing him to not participate in the program. There is a distinction. From the Bureau of Prison's perspective, an inmate would never be formally withdrawn from the program or removed from the program until he's either satisfied his full financial obligation that he may owe or been released from prison or somehow other not subject to the IFRP anymore. But that's different than Mr. Fontenay's affirmatively choosing not to participate in the program, which he could do at any time. What is that called? That is nonparticipation in the program. And what would happen is he would tell his unit team advisory committee that he chooses no longer to make the payments, which he has not done to this point. They would place him in refused status, and he would not have the full access to certain privileges that are associated. I'm sorry. What status is that? It's called refused. Refused status. Yes. Okay. And maybe that would assist the court, a distinction between the different status levels that are part of the IFRP. Currently, Mr. Fontenay is in a participating status because he is making these quarterly payments into the IFRP. If he would say to his unit staff team, I choose to not make these payments, he would be placed in refused. And the consequences of that would be he would not have full access to privileges associated with being in that institution. He doesn't lose all privileges. He's not penalized. He just wouldn't have the same access to certain privileges, and that's all outlined in both the Code of Federal Regulations and the Bureau of Prisons Program Statement. There is another status that is called temporarily exempt, and what that would be is if an inmate is not earning enough to satisfy the minimum amount required of the IFRP, that inmate would be placed in temporarily exempt, and the Bureau of Prisons would not then attempt to collect the payments from that inmate. So he says he wants to be removed, and you say, no, you can't be removed, but you can be in refused status, where in that status you're not going to have this money collected. Certainly. Yes, Your Honor. Okay. I'm sorry. And to do that, though, it's not enough that he wrote that internal request that was denied because somebody said, I guess it was the warden said, we can't grant this because we've got a court order saying you have to make these payments. That wasn't enough to get him into refused status? What exactly does he have to do? Why isn't that enough? Well, again, I think it's the distinction between being asked to be fully removed from the program entirely as if he never owed. This is crazy. I don't even understand what you're talking about, but he has to be able to figure out, like, oh, no, you can't say you want to get out. You have to say you want to refuse. I don't understand. How is he told their magic word that he has to say? The unit team within his institution is responsible for monitoring his progress and conducting periodic meetings with him, and at those meetings he could simply say, I don't want to make these payments anymore as part of the program. You're saying he has not done enough. Like, his request, I want to get out of this program, which was denied on grounds that you now say were incorrect, right? You're not supporting the original denial, which was on the grounds that the district court has ordered participation. You think that was wrong, right? I'm not sure I fully understand your question, Your Honor. Originally, I thought in your brief you said you acknowledged that originally his request to withdraw from the program was denied because there was an allusion to the district court order, and the warden said we're not free to override what the district court has ordered, which is that you participate in this program. And then in your brief you say, well, that was wrong, we've looked at some more cases, and it turns out that's just a recommendation and we can do what we want. But all of that, you are now saying, is not enough for him to have signaled that he wants to stop making these payments. He has to do something else? I think the distinction is what relief he's asking for. He asked in his administrative remedy to be completely removed from the program, and the effect of that would be as if, sorry. I think he says in both of them he wants to stop having them take the money from him, and he doesn't want to suffer consequences. Correct. So he put both in. And I guess if he just said, I want out, and I will take the consequences, you're saying that they would have put him in removed or refused or some other status. Certainly, Your Honor. In effect. Is that true? Yes? Yes, they would put him in refused. Essentially what Mr. Fontenay is asking is to have the proverbial cake and eat it too. He wanted to be let out of the program entirely, as if he owed zero restitution obligation, and also still have full access to all privileges associated with being in the federal prison that he is housed in currently. And you can't not take the good with the bad, as was alluded to earlier. Counsel, it seemed to me this is the problem with counsel. We went around with him, but I think I'm beginning to see and sense what the ward connection is maybe, perhaps. Let me respond to this. You, part of the consequences, am I correct? None of the consequences allow you to take money from him just because he's working. However, he says, I don't want to pay anymore. Your consequences are the type of job where he can work. But your consequences, for example, is it garnishment? If you're in the refused status, can you garnish? If he's in the refused status, no money would be withdrawn. So the answer is no. You can't garnish. Correct, Your Honor. You also wouldn't stop him from working as a consequence of the program consequence. I'm not talking about your discretion beyond the program, but you couldn't stop him from working either as a consequence. Correct? My understanding is he would still be allowed to work, but I'm happy to clarify that. No, no. He'll stand and represent the government. You've clarified it for me. You can't stop him from working. You have to go to that court order to force him to what you want to do, because the court order says as long as he works, you have to take money from him. That's beyond your program. Your program doesn't allow that. That's the problem. And the court order says when he works, you will take money from him. And that's what counsel is saying. That's the delegation aspect of it, because your program doesn't cover it. Your program only covers a debt you collected. If you don't want to participate, then there are consequences. But the consequences do not include garnishment, nor you can't work. But the court says, no, as long as he works. And that's what they say. The Bureau of Prison says, I can't change that. It says, as long as you work, I have to take money from you. But the program doesn't say that. And that's what I think counsel is speaking, but I think that's what he's saying. That's the problem with the, I have to refer to the delegation under the court's order, which is beyond your internal institutional program. And that's what the 2241 aspect of it. The order doesn't prevent him from working in prison for somebody outside the prison. Defendant shall make restitution payments for any wages he may earn in prison in accordance with the IFRP program. So if he makes some wages in prison not in accordance with the IFRP program, he's not affected by the restitution order. Not expressly, Your Honor. Right. And to address the delegation issue, first I would state that Mr. Fontenay's reliance on Ward B. Chavez from the Ninth Circuit is entirely misplaced in this case. First, as Your Honors are well aware, that is a case from the Ninth Circuit, which is not binding precedent here. We really do know that. Yeah. Yeah. We got that one. Further, in that opinion, there is a footnote that expressly recognizes that the result may be different here in the Fourth Circuit. And they say, in the Fourth Circuit, a judgment of conviction need not contain a schedule of restitution to be made during the term of incarceration. And in a series of unpublished opinions from this court, that has been the position of the Fourth Circuit, that for a sentencing court to order restitution due immediately and then allow the inmate to satisfy that obligation by participating in the IFRP is not an improper delegation. And that has been consistently stated in three unpublished opinions from this court, United States v. Cottle in 2008, United States v. Watkins in 2006, and Coleman v. Brooks in 2005. I'm sorry. If I'm understanding what you're saying right, and this is a confusing case for me, we shouldn't even be reaching that question, right? I mean, what do you want us to do? Like, shouldn't we just send this back and tell, I guess, someone to tell Mr. Fontenay exactly what he has to say to get out of this program? Why would we reach the – do we have to reach this question? It seems like there's no real dispute. He wants out of the program. He's allowed to get out of the program. What are we doing here? He is certainly allowed to stop making payments into the program at any time. And the court is not necessarily – I don't know that the court is necessarily the best venue to communicate that to him. And certainly the court – what we're asking for is this court to affirm the district court's decision that entirely dismisses his 2241 claim. On the grounds that it's not cognizable. Well, there are two reasons why this court should affirm that decision. First, the district court properly found that it is not cognizable under 2241. Well, if we disagree with you there, what do you have? Well, if this court would find that it is cognizable as 2241, the district court also found that even if we reach the 2241 merits, Mr. Fontenay's claim fails on those merits because the sentencing court does not improperly delegate its responsibility by ordering restitution due immediately. So what you want is to reach an issue that I don't think he's asked us to. Well, certainly – That seems very odd to me. What about this counsel? What do we say? Because it is the 2241 aspect of it. Counsel is on a sort of Damocles because he has to stay on one side of it to be able to have jurisdiction on the other side. But another thing to get the real meats of it. But what if we granted an injunction that says something like this? The Bureau of Prisons is enjoined in this matter to the extent that you are limited to only the consequences that you have under that program, period. You can't do anything further. And that would tease it up, wouldn't it? Because he would have all those consequences, but he would still be able to work. And you couldn't garnish him, right? What about that? Would that be fine? Well, certainly, Your Honor, the Bureau of Prisons is not asking to do anything that's beyond their policies and procedures within the IFRP. Are you not? What about his working and your garnishing? Are you – and you represent you won't garnish him? I'm happy to take that back to the Bureau of Prisons and clarify their position on that exact question, Your Honor. Because that seems – you have a program. You shouldn't go further than the program. But if you're relying on the order, that's another question. But, of course, he wants more than that order. Exactly, right. Correct, Your Honor. And that's why I said – that's why – but that's why the remedy is limited to only restricting you what you can do under the program of the execution. It would seem to me that you could moot out this case by saying to him, we recognize that you want to be refused, and we now put you in refuse steps. And certainly that would seem to address his concerns, whether – and we can pursue whether he is willing to go down that route. It doesn't matter whether he's willing to. You're the Bureau of Prisons. Unfortunately, he doesn't get to – for him, he doesn't get to have a vote on whether that would be good or not. Correct, Your Honor. But why isn't this done yet? Okay, if we think that that is how this case should come out – this is a real question. If we think that's how this case should come out, what do we do? What are you asking us to do? How do we – it seems as though there is no live – from your perspective, there is really no live dispute here. He wants to stop making payments. That's fine with you. He'll be subject to the consequences set forth in the CFR and no other consequences. You're happy with that. Is there any way to make that happen? Correct, Your Honor, which is what the Bureau of Prisons is asking for in this particular case is dismiss his 2241 claim and allow the Bureau of Prisons to settle this issue with him in terms of placing him in refused status, and that should alleviate the concern. However, the reason – I don't see that anywhere in your papers, for starters, and I don't know that we necessarily would dismiss this because then we'd be saying that there's no jurisdiction. I guess that's what you're saying, and if we should disagree with you on that, then it seems to me you're – it seems to me we need a little pro-action by the Bureau of Prisons. Well, if this Court should disagree with the Bureau of Prisons on the jurisdictional issue and find that it is addressed – properly addressed as a 2241 claim, there are several reasons why the Court should still find that Mr. Fontanez's claim to be removed from the program but still maintain the privileges fails on the merits. He's not being treated differently than any other inmate would be that owes a financial obligation. The IFRP is inherently a voluntary program, as we've discussed, and he can stop making payments at any time. He has never, in more than a decade since he's been sentenced, objected to his participation in the IFRP until very recently. He has consistently made payments since shortly after he was sentenced into the IFRP. He did not challenge his restitution order, the validity of that restitution order. I think actually we know the facts. Let me ask you this. Can you make a representation on the record here today that the Bureau of Prisons will send us a pleading saying they are prepared to put him in refused status if that's what he requests? If he would make a request for refused status, they would put him in refused status. Can you make that representation to us? Certainly, Your Honor. If he indicated that he wanted to be placed in refused status and stop making payments, he would be placed in that refused status. You would place him in that refused status? Bureau of Prisons representatives within his institution would, yes. All right. To briefly conclude, Your Honors, we are asking that this court affirm the district court's proper decision dismissing Mr. Fontenay's 2241 claim because that claim is not cognizable under 2241, and even if we reach the merits, his claim still fails because there was no improper delegation under this court's own precedent in unpublished opinions to order a restitution due immediately and then allow the inmate to satisfy that through the IFRP. Counsel, you still have time, and I still have a question. Absolutely. I appreciate your being very earth-swell and helping the court in that. I really do. But you're going to have a problem, as I see the record here, and that is this. Refused status won't do it for you because, as the Bureau of Prisons says before, refused status just says you don't pay anymore. It has nothing to do with two phenomena. You're still working, and you're getting income. That's why they said, I can't stop taking this money from you because the court order said I can't. The court order said if you work, you shall take money from him. That's different than the program. That's what it keeps saying. That's the problem with this case. When you do that, they're going to tell you, I'm not going to be the one that the court's going to come on to me and say, I heard that he's making money and you're not collecting it. That's in violation of the district court's order of sentencing. It clearly is. So I would just caution you, and I really appreciate your help in the court, but that still is a live issue with the Bureau of Prisons. And I understand they've got a problem because it's inconsistent with the program consequences because anybody else would say, okay, I'm refused. I can work. You don't have to do it. Here he can't do that because if he works, the court order says you shall take money from him. That's the problem. Okay, but anyway, I just want to say that when you go back, that's the problem when you make your representation. Make sure your client and all the administrative people in the BOP sign off on it because that's going to be an internal problem. But he is in refused status. He doesn't work in the prison, right? Yes, he does. I would need to clarify that with a BOP representative, but I'm happy to do that. I don't know that. He does work. He doesn't work. I thought he didn't work and he didn't get paid in the prison. The refused status does not stop you from working. It stops in terms of where you can work and some restrictions, but you can still work. It's just they don't collect. That's the problem. But the court order says, and I think that's where Ward is really implicated here in this case because that order says beyond the CFR regulations and consequences, the court says if he works for any source, you will collect. Refused status won't change that. Let me change my question. He doesn't work at a prison job if he's in refused status. Is that correct? Again, I'm happy to clarify the specifics of how that would transpire. All right, why don't you do that? Can I ask just one more question about how this intersects with the court order? So in your brief, the warden's original position is we're bound by this order. We can't do anything for you. But in your brief, you sort of construe what the court has done as a recommendation and say that you're not really bound by it because it's a voluntary program, and so the district court doesn't really have authority to require anyone to do it. And, Your Honor, I'm over time. Would you like me to elaborate? Yes, please answer the question. Sure. The warden did say that because of the court order, that they were not granting Mr. Fontenez's request to be removed from the program. And in our brief, we state that the Bureau of Prisons has significant discretion in how it manages the internal workings of the status of an inmate within its organization. Having spoken to representatives of the Bureau of Prisons, I can clarify in reviewing their program statements and the Code of Federal Regulation, all inmates that owe a financial obligation are treated equally under the IFRP. And from the Bureau of Prisons' perspective, that language in the court order that suggests using the IFRP is equivalent to surplus language or superfluous language because once the court said you owe $27,000 and it's due immediately, meaning it would be due while he's incarcerated, he falls within the auspices of the IFRP. And for Mr. Fontenez to paint this appeal as if he's being treated differently than any other inmate is not in line with either the record or the way the IFRP works. And in fact, reviewing the sentencing transcript from when he was sentenced, the district court intended to benefit Mr. Fontenez because it specifically says, Mr. Fontenez, this is at page 158 of the record, Mr. Fontenez, I made the restitution order payable immediately so you will be able to find some work in the Bureau of Prisons. You have some talents that you can make use of there. So the original intent was to benefit Mr. Fontenez to find work, but as I stated, the Bureau of Prisons sees that particular language of the restitution order almost as surplus. Right. And you kind of have to because it's a voluntary program. So district courts can't go around ordering people to participate. It just doesn't make sense. It's just what Judge Gregory is saying. There's a disconnect between an actual order that you subject your wages to garnishment under the program and the voluntary nature of the program. Correct, Your Honor. It is a completely voluntary program. And as soon as a sentencing court says that an inmate owes any form of restitution, that falls within the auspices of the IFRP, and the BOP will attempt to assist that inmate in satisfying it. The inmate can always say, I'm not making payments. Correct. At any time. So you would read this order as being surplusage in the nature of sort of a suggestion but not an actual order that he subject his wages to garnishment under the program because it's voluntary. Absolutely, Your Honor. Thank you very much for your time, Your Honors. Thank you. All right. I'd like to make three points, I think, and I want to make sure to answer Judge Montz's question from initially. It is true that I think perhaps the reason why these questions, I haven't anticipated any of them, is because I didn't really know that the government was going to change its position. Mr. Fonten, as his understanding is, when he tried to get out of the program, they told him he couldn't get out of the program. They said that essentially the judgment and commitment order has made the program part of your sentence. The penalties that are imposed for not participating in the IFRP are now imputed into the judgment and commitment order. That's how he understood it, and that's what he said when he filed his administrative remedy request at JA26 or 25, or maybe this is a 20. I'm sorry, I can't see. But he says the BOP has no authority to obligate me to the IFRP. The previous contract referred to cannot stand while in violation of the law, nor can the BOP sanction me. Therefore, in accordance with the law, I'm to be removed from the IFRP obligation. And the Bureau of Prisons said in the record at JA26, it quoted the judgment and commitment order language, and it said the BOP does not have the authority to overrule the decision set forth by the court. I don't know. You did read their brief, right? I read the brief, and I understood it to be what Judge Harris's point was, was that the U.S. Attorney's Office thinks that it's a recommendation. I do not think that's what the Bureau of Prisons thinks, and I'm in a bit of a pickle here because I have a record. I have what my client tells me. I have JA26, and now I have the U.S. Attorney's Office coming and telling me,  so this case is now moot. You also have the federal regulation, right? I absolutely have read this. And the federal regulation would apply to everybody, right? Right. And the federal regulation looks like everybody's in it. It looks like everybody has the following choice. Either be in the program and get the privileges of it. Also, you have to deal with the automated debit part, you know, all that stuff. Or get out, and you get, I guess, some privileges. And that's all what your man wants is what's in the federal regulation. Well, I think what Mr. Fontenez is capitalizing on is what I just read you from the JA and what we've tried to channel in the brief, which is he wants to be treated like inmates in the Ninth Circuit under Ward v. Chavez. Well, what about being treated like the other inmates under the federal regulation? I mean, I think Mr. Fontenez's response to that would be that's not my case. My case is I've got a judgment and a commitment order that the Bureau of Prisons says it's relying on to force me into the program. It can't do that for two reasons. One, it can't force me into the program. And two, it definitely can't set the terms and conditions of my restitution obligation because the sentencing court didn't say anything about that, and it has no authority to do so. When you say BOP is saying that, I mean, they're not saying that anymore, right? Through counsel, they're now making a different representation. It can't just be like, well, that doesn't matter. We're going back to what happened last time. Judge Harris, I appreciate her representation. We've even talked about trying to settle this case. I think that there is fundamentally a disconnect here between what the government is representing today and what the Bureau of Prisons is operating. And, you know, just kind of as an atmospheric point, there are OIG investigations every five years of the Inmate Financial Responsibility Program, and every single time there's, like, 20 things that are identified that the BOP is not doing that the program statement says they should be doing. So there is a long history of a disconnect between what the BOP has implemented in this program and when it's not. Just sort of to finish the thought. So, I mean, that seems like maybe a good reason for us not to just dismiss the case and let it go away and assume it will all come out right. But isn't it enough to maybe send it back to the district court with instructions to make sure that your client is allowed to stop making payments and be put in this refuse status? I think that the answer to your question – Consistent with the representations that have been made before this court? I think the answer to your question is still no, because Mr. Fonten, as his argument, as it has been since his administrative review and as we briefed extensively in the opening brief and in the reply, is that there's still the schedule-setting component, that the Bureau of Prisons is offering him this IFRP or not. It cannot withhold the privileges from him for failing to comply with the IFRP, because the judgment and commitment order from the Bureau of Prisons' kind of understanding of it compels his participation in the IFRP. That's kind of the problem, is that the – It goes back to our original discussion with you. You're not challenging the order. I mean, you've made an express decision not to put yourself there, because of jurisdictional point, I suppose. So I fully acknowledge that there is a tension between our arguments on the jurisdictional point and our argument with respect to the merits. The best that I can say is that we're trying to thread the needle, but the second half of the brief is extensively talking about the order, why the Bureau of Prisons' understanding of the order is unconstitutional, why the order, if it displaces the Article III court from setting the operative terms of restitution. But if you're not challenging the order, what difference does that make? But that's my point, Judge Motz, is that it is a challenge to the order through the mechanism of 2241. How does it have jurisdiction? Well, it's a challenge to the order in the sense that the Bureau – it affects the relief. It doesn't affect the nature of the challenge. The relief is barring enforcement of the order. You know, I think maybe Mr. Fontenot has affected my understanding of this case, but my understanding is all we're asking for is an injunction to bar the Bureau of Prisons from enforcing the judgment and commitment order, kind of full stop. That means that because the judgment and commitment order obligates its participation in the IFRP, a point that the BOP has now confirmed for us in J26, although they changed their mind today, or in the paper that they filed yesterday, you know, that's all well and good, but his understanding of the record on appeal and the argument that we're making today is the enforcement of that order is unlawful because it is an unlawful order, and therefore the Bureau of Prisons has no lawful authority to force him into this program. But even an injunction by us saying it is unlawful doesn't get to what he wants because he wants to not pay under the they went back and said, okay, we're fixing this, and now you have to suffer the consequences. He doesn't want that either. That's what you told us this morning. He wants out, and he doesn't want to have any of the penalties. He wants both. As I said, the first thing out the gate was he wants exactly what they got in Ward v. Chavez. The pin site for Ward v. Chavez is 1051 accordingly because the sentencing court in Ward's case did not set forth a proper payment schedule in the restitution order. That order is unlawful, and the BOP therefore lacks the authority to collect restitution payments from Ward through the IFRP. I'm sorry? They challenged the order, and you don't. You know, I'm a little bit confused about this, like, challenging the order, not challenging the order. We cite Ward v. Chavez multiple times in the brief. The opening part of the brief, both in the reply and in the opening brief, talks about how the Bureau of Prison's interpretation of this order is unlawful, see the multitude of cases about why this interpretation of this order is unlawful. You know, full stop. I mean, I'm kind of confused about what magic language we had to put in the conclusion component of the opening brief to say we're really challenging the order. I think he just had to say you don't think he owes any money, that there's an invalid restitution order. As I understand Ward, what they're saying is the restitution order is unlawful. He doesn't owe any money. That's why BOP can't collect money. He doesn't owe anything. There's no valid judgment requiring him to pay any money at all. You didn't say that. I think that we did. I agree that we don't say it in the exact way that you say it, but what we have said is this order, the Bureau of Prison's understanding of this order, is unlawful. See Ward v. Chavez. No, because you think the part where if you read the order to require participation in the IFRP, you think that's unlawful because it's a voluntary program. I mean, I follow that much. But you're not saying he doesn't owe the money. In fact, you say we don't doubt that he owes the money. He said in response to questions from us that he acknowledged that he does owe the money. I think all three of us asked you that one way or another. The question of whether there is a restitution obligation floating around and whether the Bureau of Prisons has lawful authority to collect on that obligation are two separate questions. I don't care if there is $27,000 sitting out there. I care about whether the Bureau of Prisons has any authority to collect on the $27,000. That's great, but I understand Ward to be saying the reason the Bureau of Prisons can't collect the money is because he doesn't owe anything. So I totally get that they could be theoretically separate questions, but I think they come together very neatly in a case where someone challenges the order and says because the district court didn't comply with the clear terms of the MVRA and set out a schedule for repayment, there is no valid restitution order, period. Amount owed, zero. BOP can't collect money. I can follow the logic of that argument, but I'm having more trouble with yours. Well, I really think that is more or less exactly our argument. And, in fact, when I've made that point, the response from Judge Harris and Judge Motz has been, but you didn't challenge the order, and there's this tension with the jurisdiction argument. In Ward, it was a 2241 case, too. Yeah, but how much discussion is there of 2241? Your Honor, the Ninth Circuit had already resolved that question in Limon like 10 years before, as had the Third Circuit in McGee, as had the Fifth Circuit in Diggs. I mean, the jurisdiction point, I think, is, like, dead on arrival. The government has, I don't think, any argument about jurisdiction. There are three Federal Circuit courts that have said, with challenges very similar to Mr. Fontenay's, if not exactly like it, this is 2241. It may be that you could have challenged it on direct appeal in a different form. Oh, well, it's still a 2241 claim. Because you're, as I read those cases, they're 2241 jurisdiction because you are attacking the execution of a restitution order, not the restitution order itself. And that's where it seems to me the Ninth Circuit case is maybe a little different. I think that that is a very fine distinction that we have capitalized on in order to get into the 2241 context. I didn't make it up. You would recognize that those cases talk about, and I thought that you talked about it. No, I'm entirely agreeing with you, Judge Ma. So when you say it's a fine distinction, it's a correct distinction. Absolutely, and that's the distinction that we have made. I think you and I are on the same wavelength about this. I want to be very, very clear. Even if we are wrong about this compulsory point or if the government's representation trumps the record, we still have an argument about schedule setting, which is that the Bureau of Prisons cannot offer him this kind of false choice of get into the IFRP or lose the privileges for not participating in it. And the reason for that is because the kind of predicate to all of that, the predicate to this choice is we are the only ones in control of restitution. The sentencing court has no authority or responsibility in it. And that's the last third of the opening brief. And that's the citation to this court's cases in Miller, Johnson, Dawkins. All of those cases admittedly are in the direct appeal context, and they say that there cannot be restitution orders in which the sentencing judge has abdicated his or her authority on the question of setting the operative terms of restitution. Thank you. You're well over time.  I apologize. Do we have any questions? Thank you. Thanks very much.
judges: Diana Gribbon Motz, Roger L. Gregory, Pamela A. Harris